# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TED DARNELL DANIELS**, <br><br> Petitioner, <br><br> vs. <br><br> **JEANNE S. WOODFORD, Director,** <br><br> Respondent. | CASE NO. 04cv1639-DMZ(AC) <br><br> **ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE AND DENYING PETITION FOR WRIT OF HABEAS CORPUS** <br><br> [Docs. 3, 5, 12] |

Petitioner Ted Darnell Daniels, a state prisoner proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his June 7, 2001 conviction for burglary, reckless driving, and three counts of assault with a deadly weapon. The Honorable William McCurine Jr., United States Magistrate Judge, has issued a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1) and Civ. L.R. HC.2, recommending that the Court deny the petition in its entirety. Petitioner has submitted his objections to the R&R. This Court has reviewed the R&R pursuant to 28 U.S.C. § 636(b)(1), which provides for *de novo* review of the Magistrate Judge's findings and recommendations to which objections have been made. For the reasons discussed below, the Court adopts Judge McCurine's recommendation and denies the petition.

/ / /

# I.

## BACKGROUND

**A.  Factual Background**

The following facts are taken from the California Court of Appeal's unpublished opinion in *People v. Daniels*, slip op. No. D038444 (Cal. Ct. App., 4th Dist. Div. 1, February 16, 2003). The Court relies upon these facts pursuant to 28 U.S.C. § 2254(e).

> This saga began early on Christmas morning 1999, when San Diego Police responded to a burglary alarm at a Fry's Electronics store. A padlock securing the store's warehouse had been cut off, the warehouse entered and 41 laptop computers taken.
>
> The first officer to respond was San Diego Police officer Kristen Adams. Adams observed a blue Ford van at the store with three men in it. The van drove away, passing the police car as it left the store. Officer Adams observed Daniels driving the van. Officer Adams began a pursuit with emergency lights and siren that would continue for many miles, at high speeds and ultimately involving multiple police officers and vehicles.
>
> When the van left the Fry's lot it headed south on I-15 and then onto 40th Street. At the intersection of 40th and Monroe the van stopped briefly, the passenger and side doors opened and two men fled from the van. The van then sped away with police in pursuit. The chase continued south on I-15 until the van exited at Market Street. Running red lights, the van headed back to I-15 northbound at high speed. It crashed through orange barriers at a point where the road was closed for construction. Flat tires as a result of following Daniels and the van through the construction disabled one of the police cars in pursuit.
>
> The chase continued northbound on I-15 at speeds in excess of 100 miles per hour. Traffic officers tried to overtake the van, get ahead of it and lay down nail strips in the roadway. One of the officers drove alongside the van and observed Daniels as the driver and sole occupant. Daniels made an abrupt exit from the freeway and returned heading south again, with police in pursuit. Eventually police abandoned the idea of laying nail strips to stop the van because of the dangerous and erratic manner in which Daniels was driving.
>
> Daniels continued southbound at high rates of speed. Ultimately he entered I-8 eastbound until he pulled over just west of the Waring Road exit. As police slowed to approach the van, Daniels made a U-turn and started driving west in the eastbound lanes of I-8. Officer Kyler positioned his car across lanes 1 and 2 at a 45-degree angle. Daniels looked directly at the patrol car, "just gassed it" and headed towards the patrol car. His van struck the left front of the patrol car, even though there was room for him to drive past it.
>
> After hitting Kyler's car, Daniels proceeded west in the eastbound lands of I-8. Daniels next drove at Sergeant Reschke's car, striking the front of the patrol car. Daniels drove on west bound until his car became disabled a short distance later. Daniels fled from the car and was located hiding in a nearby riverbed. By the time the pursuit ended, police had been chasing Daniels for 42 minutes.
>
> Daniels testified on his own behalf and said he was not the driver of the van. He offered an explanation for his presence in the van and testified that an Asian man was

driving throughout the police pursuit. He said that when the van was disabled he and the Asian man fled. He was later apprehended by police.

The defense called Ronald Carr, an expert witness, to testify as an accident reconstructionist. He discussed his view of the accidents, indicating he thought the van did not hit any of the patrol cars head on. He found it impossible to determine what, if any, damage occurred to the van during the encounter.

**B.     Procedural Background**

On June 7, 2001, Petitioner was convicted in San Diego County Superior Court of burglary in violation of California Penal Code § 459, evading an officer with reckless driving in violation of California Vehicle Code § 2800.2, and three counts of assault with a deadly weapon in violation of California Penal Code §§ 245(a)(1) and 1192.7(c)(23). The jury found that Petitioner had suffered a prior serious felony conviction, two "strike" convictions, and five prison priors within the meaning of California Penal Code §§ 667(a), 667(b)-(i), and 667.5(b). (Lodgment No. 2, 15 Reporter's Transcript ("RT") at 894-97; Answer at 2; First Amended Petition ("Petition") at 2.) Petitioner was sentenced to fifty-five years-to-life in state prison. (Lodgment No. 2, 16 RT at 945; Petition at 2.)

Petitioner appealed his conviction to the California Court of Appeal on grounds that there was insufficient evidence to support his convictions for assault with a deadly weapon. (Lodgment No. 3, *People v. Daniels*, No. D038444, SCD 149951, slip op. at 13 (Cal. Ct. App. April 9, 2002); Petition at 2.) The Court of Appeal affirmed his conviction on February 26, 2003. (Lodgment No. 4, *People v. Daniels*, No. D038444, slip op. (Cal. Ct. App. Feb. 26, 2003); Petition at 2.) Thereafter, Petitioner sought review with the California Supreme Court. (Lodgment No. 5, *California v. Daniels*, No. SD2001DA1314 (Cal. April 10, 2003); Petition At 2.) His appeal was denied on May 14, 2003. (Lodgment No. 5, *People v. Daniels*, No. S114808, slip op. (Cal. May 14, 2003); Petition at 2.)

Petitioner also filed a habeas petition in San Diego County Superior Court claiming ineffective assistance of trial and appellate counsel. (Lodgment No. 6, *In re: Daniels*, No. HC17735, SCD 149951 (Cal. Super. Ct. Aug. 4, 2004); Petition at 3.) That petition was denied on August 4, 2004. (Lodgment No. 6. *In re: Daniels*, No. HC17735, SCD 149951, slip op. at 3; Petition at 3.) Similar petitions were summarily denied by the California appellate court on December 7, 2004, and by the California Supreme Court on March 2, 2005. (Pet. at 3-4; Lodgment No. 7, *In re: Daniels*, No.

1 S130029, slip op. at 1 (Cal. March 2, 2005).)

2 Petitioner filed the instant petition in this Court on August 11, 2004. (Doc. No. 1.) Thereafter, Respondent filed a Motion to Dismiss on September 14, 2004. (Doc. No. 5.) On October 6, 2004, Petitioner filed a Motion to Stay Pending Exhaustion of Unexhausted Claim in State Court and an Opposition to the Motion to Dismiss. (Doc. No. 8.) On April 6, 2005, the Court denied the Motion to Dismiss, denied the Motion for Appointment of Counsel, and denied the Motion to Stay as moot. (Doc. No. 13.)

After exhausting his state court remedies, Petitioner filed a First Amended Petition for Writ of Habeas Corpus on April 7, 2005. (Doc. No. 14.) Respondent filed an Answer to the Petition on July 12, 2005. (Doc. No. 30.) Petitioner filed a Traverse on September 14, 2005. (Doc. No. 37.)

Petitioner challenges his convictions for burglary, reckless driving, three counts of assault with a deadly weapon, and findings that he suffered one serious felony conviction, two "strike" convictions, and five prison priors. (Petition at 2.) He argues the Petition should be granted on the following grounds: (1) insufficient evidence to support the convictions for assault with a deadly weapon; (2) ineffective assistance of trial counsel; and (3) ineffective assistance of appellate counsel.

## II.

### STANDARD OF REVIEW

#### A.     Legal Standard for Review of R&R

The duty of the district judge regarding the review of an R&R is set forth in Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1). Where objections are filed, section 636(b)(1) directs the district judge to review *de novo* those portions of the R&R to which objections have been made. *See Hunt v. Pyler*, 384 F.3d 1118, 1124–25 (9th Cir. 2004). The district judge may then accept, reject, or modify, in whole or in part, the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1).

However, as to those portions of the R&R to which no objections have been made, the district judge may assume the correctness of the magistrate judge's findings and recommendations. *See U.S. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("the district judge must review the magistrate judge's findings and recommendations *de novo* if objection is made, but not otherwise.");

1 *see also Thomas v. Arn*, 474 U.S. 140, 149–52 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). A failure to object is deemed a sort of "procedural default," waiving the party's right to review by the district judge. *Id.* at 151.

### B. AEDPA Standard of Review

Because Petitioner filed his habeas corpus petition after the passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), the Court's review is limited by the provisions set forth in 28 U.S.C. § 2254(d). Under this standard, a habeas petitioner is not entitled to relief unless he can demonstrate that the State court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)–(2). As such, section 2254(d)(1) imposes a "highly deferential standard for evaluating State-court rulings," and "demands that State court decisions be given the benefit of the doubt." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003) (*citing Lindh v. Murphy*, 521 U.S. 320, 333 (1997), and *Woodford v. Visciotti*, 537 U.S. 19 (2002)).

### III.

### DISCUSSION

As discussed, Petitioner challenges his convictions based on: 1) insufficient evidence to support the convictions for assault with a deadly weapon; 2) ineffective assistance of trial counsel; and 3) ineffective assistance of appellate counsel. Petitioner, however, filed no objections to the R&R's denial of his claim based on sufficiency of the evidence. The Court therefore addresses only Petitioner's second and third arguments.

### A. Ineffective Assistance of Trial Counsel

Petitioner claims his Sixth Amendment right to effective assistance of counsel was violated as a result of his trial attorney's failure to investigate or subpoena witnesses as well as his failure to object to evidence of his prior convictions presented at trial. (Petition at 7.) Under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner seeking to establish ineffective assistance of counsel

1  must establish that the attorney's representation did not meet an objective standard of reasonableness
2  and that there is a reasonable probability of a different result *but for* the attorney's errors. *Strickland*,
3  466 U.S. at 688, 694. To prevail, the petitioner must prove both requirements, and the Court may
4  reject his claim by finding either that the attorney's performance was reasonable or that the claimed
5  error was not prejudicial. *Id*. at 697.

### 1.  Failure to Investigate and Subpoena Witnesses

With respect to Petitioner's contention that his trial attorney failed to investigate and subpoena witnesses, the R&R concludes: (1) Petitioner fails to satisfy the first *Strickland* requirement because the attorney's decisions were reasonable under the circumstances; and (2) Petitioner fails to satisfy the second *Strickland* requirement because he does not show a reasonable probability of a different result *but for* the attorney's performance. (R&R at 10.)

Petitioner objects to the R&R on the grounds that his trial attorney's decision to allow videotape (rather than live) testimony of defense expert Ronald Carr constitutes ineffective assistance of counsel.[1] (Objections at 3.) Specifically, Petitioner argues his attorney's examination was inadequate because the videotape was viewed by the jury on a thirteen-inch television screen and was poorly edited, resulting in an "inconsistent and inadequate series of meaningless questions" that were contrary to the evidence and "served only to confuse the [jury]." (*Id.*) Further, Petitioner argues his trial attorney deliberately failed to familiarize herself with Mr. Carr's testimony and was therefore unable to lay a proper foundation during her examination. (*Id.*) Finally, Petitioner objects to the R&R's finding that his attorney's decision not to call a second defense expert, Donald R. Parisette, was reasonable because the testimony would have been similar to that of Mr. Carr. (*Id*. at 4.)

With respect to the first *Strickland* requirement, the Court finds Petitioner fails to demonstrate the attorney's decisions were objectively unreasonable. *Strickland* requires a strong presumption that an attorney's conduct falls within a wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. As the R&R correctly notes, the attorney's decision to videotape Mr. Carr's testimony was clearly

---

[1] Petitioner requests judicial notice of (1) the records in the Court of Appeal action, and (2) Defendant's Exhibit R, which is a videotape of Mr. Carr's testimony. [Doc. No. 41.] The Court grants Petitioner's unopposed request for judicial notice, as judicial notice of court records is routinely accepted. *See, e.g., Valerio v. Boise Cascade Corp*., 80 F.R.D. 626, 635, n. 1 (N.D. Cal. 1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981).

1  reasonable under the circumstances. (R&R at 10.) This method was the best means by which Mr.
2  Carr could testify on Petitioner's behalf as he was about to depart on a five-week vacation. (Lodgment
3  No. 2, 8 RT at 2-6.) His testimony was videotaped so the trial could proceed; it was agreed to by both
4  parties and presented to the jury as recorded. (Lodgment No. 2, 8 RT at 17-18.) Though Petitioner's
5  attorney periodically paused the tape to allow the jury to view relevant exhibits, nothing in the record
6  indicates that the attorney's presentation of the testimony or her decision to use a videotape was
7  unreasonable. (Lodgment No. 2, 12 RT at 492-497.)

8  With respect to the second prong of the *Strickland* analysis, the Court finds that Petitioner fails
9  to show a reasonable probability of a different result but for deficiencies in his attorney's
10 representation. To meet the standard, any deficiencies must prejudice the defense, rebutting a strong
11 presumption of reasonable conduct. *Strickland*, 466 U.S. at 691. As the R&R notes, Petitioner's
12 argument that the videotape was poorly edited is not supported by the record because there is no
13 evidence the tape was edited. (R&R at 10.) Furthermore, Petitioner's unsupported allegation that the
14 jury's viewing of the testimony on a thirteen-inch television screen was prejudicial because some
15 members of the jury "fell asleep" fails to demonstrate a reasonable probability of a different result but
16 for the attorney's decisions. (Objections at 3.)[2] As Petitioner offers no other reason to support his
17 argument, he fails to satisfy the second prong of *Strickland*. (R&R at 10).[3]

18 **2.    Failure to Object to Evidence of Prior Convictions**

19 Petitioner contends his attorney was ineffective because she did not object to exhibits and
20 evidence regarding Petitioner's prior convictions, thereby preventing a fair and impartial trial.[4]

---

[2] Petitioner provides no evidence in support of his allegation that jurors fell asleep during the videotape testimony.

[3] As noted above, Petitioner also argues the trial attorney's failure to subpoena Mr. Parissette was unreasonable. Here also Petitioner fails to satisfy the *Strickland* requirements. As indicated by the record, his attorney made every effort to reach Mr. Parissette but failed because Mr. Parisette was on vacation. (Lodgment No. 2, 8 RT at 2-6.) The Court must give deference to the attorney's decisions under *Strickland*, and Petitioner has not shown how his trial attorney's failure to call Mr. Parissette falls short of an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688, 689. Although Petitioner objects to the R&R's finding that Mr. Parissette's testimony would have been duplicative of Mr. Carr's, he does not offer any reasons demonstrating a reasonable probability of a different result but for his attorney's failure to obtain said testimony. (Objections at 4.) As such, his objection fails to satisfy the *Strickland* requirements.

[4] On June 22, 2006, Petitioner filed supplemental objections to the R&R raising this argument.

(Petition at 7.) Specifically, Petitioner contends Exhibit 30 (evidence regarding Petitioner's prior robbery conviction for which he was ultimately acquitted) was unreasonably admitted as evidence, and therefore his attorney's failure to object to the exhibit satisfies the first *Strickland* requirement. The R&R concludes that even assuming Petitioner's allegation satisfies the first *Strickland* prong, he fails to meet the second *Strickland* prong requiring a showing of a reasonable probability of a different result but for inadequate representation. (R&R at 11-12.)

In his Objections, Petitioner contends his attorney's failure to object to Exhibit 30 was unreasonable under the first *Strickland* requirement because the exhibit referred to charges for which Petitioner was ultimately acquitted. (*Id.* at 4.) However, he fails to address the second *Strickland* requirement – in his Objections or elsewhere – and offers no argument that the jury's verdict would have been different but for his attorney's failure to object. (Objections at 4-7; Traverse at 11.) Petitioner contends evidence of the prior convictions "[posed] a tremendous risk" that the Jury would choose to convict him based on a theory of propensity for violence. (Traverse at 11-12.) Notwithstanding Petitioner's argument, in light of the "number and severity of Petitioner's past convictions, it is highly unlikely that this one piece of evidence swayed the jury enough to convict Petitioner." (R&R at 12; Lodgment No. 2, 10 RT 127-28.) Furthermore, the jury was given specific instructions to ensure that they would use past convictions properly. (*Id.* at 12.) Petitioner's argument, therefore, is not sufficient to rebut the strong presumption of reasonable conduct that *Strickland* requires. *Strickland*, 466 U.S. at 688.[5]

### B.     Ineffective Assistance of Appellate Counsel

Petitioner contends he was deprived of effective assistance of appellate counsel in violation of his Fourteenth Amendment rights because his attorney failed to challenge the trial court's decision not to bifurcate the trial on prior convictions. (Pet. at 8.) Appellate counsel, however, is permitted to select the issues for appeal and does not have to raise every nonfrivolous claim. *Smith v. Robbins*,

---

[5] Additionally, Petitioner objects to the R&R on the ground that the Magistrate Judge failed to consider the cumulative effect of counsel's alleged errors. Citing *Crisp v. Duckworth*, 743 F.2d 580 (7th Cir. 1984), Petitioner argues that while the individual errors may not warrant relief, "[t]heir cumulative effect may be substantial enough to meet the *Strickland* [] test." (Objections at 2.) Although Petitioner correctly cites the law, the Court concludes that the cumulative effect of the alleged errors neither establishes that the representation fell below an objective standard of reasonableness nor that but for counsel's alleged errors, the result of the proceeding would have been different.

1  528 U.S. 259, 288 (2000) (*citing Jones v. Barnes*, 463 U.S. 745 (1983)).  While "it is still possible to
2  bring a *Strickland* claim based on counsel's failure to raise a particular claim," it is "difficult to
3  demonstrate that counsel was incompetent." *Id*. at 288.  Counsel is only ineffective if the issues not
4  raised are shown to be stronger than the issues presented.  Furthermore, counsel may reasonably
5  conclude that including weaker arguments would not be effective and might actually weaken the force
6  of stronger arguments.  *Jones*, 463 U.S. at 745.

7  The R&R concludes Petitioner fails to meet the *Strickland* requirements to establish that he
8  was deprived of ineffective assistance of appellate counsel.  It finds Petitioner fails to satisfy the first
9  *Strickland* requirement – representation that is objectively unreasonable – and concludes Petitioner's
10 appellate attorney acted reasonably given the circumstances of the case.  (R&R at 13.)  The R&R
11 notes that although the trial judge tentatively agreed to bifurcate the trial, the court ultimately decided
12 against bifurcation *after* Petitioner elected to testify and refused to admit prior convictions that the
13 prosecutor appropriately attempted to use for impeachment.  (R&R at 13; Lodgment No. 2, 10 RT
14 126-132.)

15 The R&R recommends Petitioner's claim with respect to ineffective assistance of appellate
16 counsel be denied because Petitioner has not presented the Court with any evidence that the
17 bifurcation issue is stronger than the issues his appellate counsel chose for appeal, or that the
18 attorney's failure to raise the bifurcation issue on appeal was unreasonable under *Strickland*.  (R&R
19 at 13-14.)  As noted above, appellate counsel is permitted to choose which issues to appeal and is
20 generally only ineffective if the issues not chosen are shown to be stronger than those presented.  *See*
21 *Smith*, 528 U.S. at 288.  Furthermore, the R&R concludes that given the circumstances presented,
22 Petitioner's appellate counsel acted reasonably and within her discretion in deciding not to pursue this
23 issue on appeal.  (R&R at 14.)

24 The Court agrees with the R&R that Petitioner fails to satisfy the *Strickland* requirements here.
25 In his Objections, Petitioner addresses reasons why he refused to admit his prior convictions,
26 including that the trial court made it clear he would be impeached with his prior convictions were he
27 to testify.  (Objections at 8.)  Further, Petitioner makes a general argument regarding ineffective
28 assistance of counsel, contending the force of his own testimony was "probably undercut by the
[jury's] [k]nowledge of [his] prior convictions." (Objections at 8.)  However, Petitioner does not

1 | address (1) whether his attorney's representation meets an objective standard of reasonableness, or
2 | (2) whether there was a reasonable probability of a different result but for attorney error. *Strickland*,
3 | 466 U.S. at 688, 694. In addition, Petitioner fails to address why the bifurcation issue was stronger
4 | than the issues his attorney chose to appeal. The Court adopts the R&R's recommendation to deny
5 | Petitioner's claim of ineffective assistance of appellate counsel.

## IV.

### CONCLUSION AND ORDER

For these reasons, the Court **ADOPTS** the R&R in its entirety. The Petition for Writ of Habeas Corpus is **DENIED**. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: December 8, 2006

HON. DANA M. SABRAW
United States District Judge

CC:   JUDGE MCCURINE
      ALL PARTIES